UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

CYNTHIA ARMSTRONG,

          Plaintiff(s),

    v.

CAPSTONE DEVELOPMENT
CORPORATION, et al.,

          Defendant(s).

NO. C05-1433P

ORDER ON DEFENDANTS'
MOTION FOR SUMMARY
JUDGMENT

The above-entitled Court, having received and reviewed:

1.     Defendants' Motion for Summary Judgment

2.     Plaintiff's Brief in Response to Defendants' Motion for Summary Judgment

3.     Defendant's Reply in Support of Motion for Summary Judgment

and all exhibits and declarations attached thereto, makes the following ruling:

     IT IS HEREBY ORDERED that the motion is GRANTED and Plaintiff's case is therefore

DISMISSED with prejudice.

**Background**

     Defendant is an Alabama corporation that manages on- and off-campus student housing at

colleges/universities across the country.  From 2001 to early 2004, Plaintiff was a general manager of

two of Defendant's off-campus apartments in Florida.  In February 2004, Plaintiff applied for and

received a position managing on-campus housing in the state of Washington.  She was required to

relocate here, and was housed in an apartment leased through August 2004 by Defendant, as the

campus housing (where she would eventually have moved had she remained in Defendant's employ)

had not yet been completed.

**ORD ON MTN
FOR SUMM JMT - 1**

1       In early June 2004, Mr. Brown (the president of Capstone On-Campus) flew to Washington.

2   He appeared in Plaintiff's office unannounced and terminated her employment.  At the time of

3   termination, he presented her with two documents: an "Employee Termination Form" and a "Waiver

4   of Employment Related Claims" ("the waiver").  The waiver contained the following offer: in return

5   for one month's salary ($3,530), a month's additional health insurance premiums, an airline ticket

6   which had been previously purchased for Plaintiff and the right to remain in her apartment through the

7   end of the lease, Plaintiff would agree to release Defendant from all legal claims (specifically including

8   claims arising out of any alleged violations of the Age Discrimination in Employment Act – "ADEA" –

9   29 U.S.C. § 621 et seq.) related to her employment with them.  The waiver further acknowledged that

10  Plaintiff had 21 days to read and consider the document and that she could revoke her agreement

11  within seven days of signing it.  Finally, the document contained a written advisement that she consult

12  an attorney.

13      Plaintiff contends (and for purposes of the motion Defendant does not dispute) that Brown told

14  her he was "in a hurry" and refused to discuss the reasons for her termination.  He did call the

15  company's Human Resources Director and left the office while the HR Director discussed the terms of

16  the waiver with Plaintiff.  Plaintiff signed both the Employee Termination Form (on which she wrote

17  that the reasons given for her termination were "untrue" and questioned whether age was involved in

18  the decision) and the waiver; the waiver was not signed by a representative of Defendant.

19      It is undisputed that Plaintiff did not (1) ask for more time to consider the severance offer, (2)

20  ask either Brown or the HR Director questions about the severance offer or (3) tell anyone that she

21  did not want to sign the waiver.  Plaintiff claims that she did not fully read the waiver before signing it,

22  but did read it in its entirety once she got home and understood at that time the conditions of the

23  agreement and that she had seven days after signing to change her mind.  She acknowledged that the

24  form advised her to seek legal counsel – she did not do so until some months later.

25

26  **ORD ON MTN**
**FOR SUMM JMT - 2**

At the time of her termination, Brown asked Plaintiff to turn over the office keys and her parking pass – she turned the keys over to the campus authorities and kept the parking pass because she had personally procured it.  She received all the benefits promised in the severance document.  In August 2005, she filed this lawsuit claiming age discrimination in violation of federal (ADEA) and state (Washington Law Against Discrimination) law.  She has never tendered back the value of the benefits she received as part of the severance package.

**Discussion**

<u>Validity of the Waiver</u>

In order for an employee's waiver of employment-related claims to be enforceable, it must be "knowing and voluntary."  29 U.S.C. § 626(f)(1); <u>Chadwick v. Northwest Airlines, Inc.</u>, 33 Wn.App. 297, 303 (1982).  The Older Workers Benefit Protection Act ("OWBPA") "sets up its own regime for assessing the effect of ADEA waivers, separate and apart from contract law."  <u>Oubre v. Entergy Operations, Inc.</u>, 522 U.S. 422, 427 (1998).  The OWBPA sets out seven statutory factors which must be met for a waiver of ADEA claims to be considered "knowing and voluntary:"

1. The waiver must be written in a manner calculated to be understood by the employee;

2. The waiver must specifically refer to rights and claims under the ADEA;

3. The waiver must not waive rights or claims that may arise in the future;

4. The waiver must be in exchange for valuable consideration to which the employee is not already entitled;

5. The waiver must advise the employee in writing to consult a lawyer before signing the waiver;

6. The waiver must give the individual at least 21 days to consider the agreement; and

**ORD ON MTN**
**FOR SUMM JMT - 3**

7.      The waiver must provide that for at least seven days after signing, the employee may revoke the waiver, and that the agreement will not become enforceable until the revocation period expires.

29 U.S.C. § 626(f)(1).  The Court finds that all of these requirements have been met by the waiver in this case.

Plaintiff argues that the waiver is neither knowing nor voluntary on two bases, neither of which the Court finds to be well-taken.  First, she contends that the failure of any representative of Defendant to sign the waiver is somehow fatal to its validity.  But the statute only requires that the agreement be in writing, not that it be signed by an agent of the employer.  Nor is it necessary that a party sign a contract in order to be bound by it.  The waiver constituted a written offer to Plaintiff, and the Defendant was bound to honor it upon Plaintiff's acceptance (signing) of the agreement.  See Restatement (Second) of Contracts § 50 (1981)(where offeree accepts offer in manner invited or required by offeror, offeree has completed manifestation of mutual assent and intent to be bound).

Second, Plaintiff argues that the language of the agreement crosses the boundary into the waiver of claims that may arise in the future.  The document purports to release Defendant from all claims Plaintiff "might raise now or in the future concerning my employment with or termination from EMPLOYER..."  Brown Declaration, Exh. B (emphasis supplied).  But the language refers to raising claims in the future, not claims that might arise in the future; since Plaintiff was no longer employed by Defendant after signing the waiver, there is no issue of "future claims."

The Court will treat Plaintiff's failure to raise any other objections to the written document as evidence of her concession that the waiver satisfies the statutory requirements in all other respects.  Plaintiff's waiver is thus "knowing and voluntary" unless she can raise a disputed issue of material fact concerning some intervening factor which can negate the element of voluntariness.

**ORD ON MTN**
**FOR SUMM JMT - 4**

1    Duress

2           Plaintiff seeks to negate the waiver by arguing that the "totality of the circumstances"

3    surrounding her termination amounted to duress sufficient to overcome any presumption of

4    voluntariness arising out of the conformity of the agreement to the OWBPA.  The party seeking to

5    avoid a contract on the basis of duress must show a wrongful or unlawful act by the other party, an act

6    severe enough to have actually deprived the signing party of the exercise of free will.  Retail Clerks

7    H&W Trust Funds v. Shopland Supermarket, Inc., 96 Wn.2d 939, 944 (1982).

8           The Ninth Circuit has employed a "totality of the circumstances" test of voluntariness of

9    waivers in racial discrimination cases (Stroman v. West Coast Grocery Co., 884 F.2d 458 (9th Cir.

10   1989)) and the Court finds no reason not to analogously apply such a test in an age discrimination

11   case.

12          The determination of whether a waiver of Title VII was "voluntary, deliberate, and informed"
            is "predicated upon an evaluation of several indicia arising from the circumstances and
13          conditions under which the release was executed." Coventry v. United States Steel Corp., 856
            F.2d 514, 522 (3d Cir.1988). . . Of primary importance in this calculation is the clarity and lack
14          of ambiguity of the agreement. . . the plaintiff's education and business experience. . ., "the
            presence of a noncoercive atmosphere for the execution of the release," . . ., and whether the
15          employee had the benefit of legal counsel. . .

16   Stroman, 884 F.2d at 462 (citations omitted).  Plaintiff relies strongly on the circumstances of her

17   termination and signing of the waiver to establish disputed issues of material fact regarding the

18   presence of a coercive atmosphere for the execution of the release.

19          The majority of these circumstances, even viewed in the light most favorable to Plaintiff, do

20   not amount to actions on the employer's part which can fairly be said to be "wrongful or unlawful"

21   (Retail Clerks, 96 Wn.2d at 944) or "so oppressive as to have deprived [the complaining party] of his

22   free will at the time he entered into the challenged agreement" (Whitman Realty & Investment Co. v.

23   Day, 161 Wash. 72, 77 (1931)).   The abruptness of the termination, Brown's showing up

24   unannounced, his unwillingness to discuss the reasons for the termination, his being "in a hurry" are all

25

26   **ORD ON MTN**
     **FOR SUMM JMT - 5**

stressful circumstances, but not wrongful or unlawful.  Plaintiff was presumably an at-will employee and Defendant had a right to terminate her without notice and without cause.  Nor does the fact that the termination created economic hardship establish grounds for a duress claim (or every waiver related to a termination would automatically be subject to challenge; see, e.g., Retail Clerks, 96 Wn.2d at 944).  Plaintiff also attempts to make much of her knowledge of a similar situation with another Capstone employee (a situation which Defendant distinguishes factually); but again, if the activities are not wrongful or unlawful it is not significant for purposes this analysis that they represented something of a pattern within the company.

Plaintiff argues that her rather unique housing arrangements with her employer, combined with the severance offer to allow her to remain in the company's apartment for three more months, created duress.  Her arguments in this regard are unpersuasive, none less so than her contention that being "forced" to relocate to the state of Washington was a contributing factor to her claimed duress.  Plaintiff's own statement of facts makes it clear that she requested the transfer across the country.  (Reply Brief, p. 4.)  Equity will not permit her to convert her voluntary relocation into part of some coercive pattern on the part of her former employer.

A great deal of speculation is indulged in by both sides regarding what would have happened to Plaintiff's housing situation had she refused to sign the waiver.  Plaintiff argues that she would have been forced, homeless, out into the streets, although she admits that she never inquired of Brown or anyone else what the effect of failing to agree to the severance offer would have been on her housing.[1] Defendants' representative Brown offers by way of declaration that "he would have been flexible on her move-out date if she had declined to sign the Waiver" (Brown Decl. ¶¶ 14-15) – a textbook example of a self-serving statement and one to which the Court is inclined to give little weight.

---

[1] Plaintiff's counsel cites to Plaintiff's declaration for the assertion that she was told by Brown that she "would not be given the right to remain in her residence unless she signed the severance agreement. (Armstrong Decl., ¶14: 4-11)" Reply Brief, p. 16.  In fact, a review of Plaintiff's declaration reveals no such claim on Plaintiff's part.

**ORD ON MTN
FOR SUMM JMT - 6**

In the absence of any admissible evidence on the issue, the Court is forced back to the definition of duress as "a wrongful or unlawful act by the other party. . . severe enough to have actually deprived the signing party of the exercise of free will." Retail Clerks, 96 Wn.2d at 944. Several factors mitigate against such a finding in these circumstances, the chief of which is the fact that it would not have been unlawful for Defendants to have terminated Plaintiff's lease at the termination of her employment, a fact that Plaintiff knew or should have known prior to accepting the offer of a transfer to her new position (with the attendant requirement that she reside in Defendants' housing). And, as Plaintiff herself points out, Washington law requires 30 days' notice to evict on a month-to-month or periodic tenancy (RCW 59.040.020), so the threat of her being immediately forced out into street was remote at best.

Plaintiff's claim of duress resulting from her fears about her housing are further undercut by the requirement of the OWBPA that the agreement was unenforceable until the lapse of the 7-day revocation period. Although Plaintiff says that she did not thoroughly read the waiver at the time she signed it, she does declare that she read it fully later that day and understood its terms and conditions. Armstrong Dep. pgs. 55:24-56:18, 63:8-64:4, 64:10-18. Even if Plaintiff had signed the waiver under the fear (however unfounded) that she would be homeless if she refused to sign, she knew that she had a seven-day period following the date of signing in which to seek legal advice, seek alternative housing or do any number of other things which might have alleviated her fears of being without a roof over her head. There is no indication that Plaintiff did any of these things, and the Court is not prepared to transform her unsupported speculations about what might have happened to her had she not signed the waiver into disputed issues of material fact.

Plaintiff's Failure to Tender Back

**ORD ON MTN**
**FOR SUMM JMT - 7**

1        In light of the Court's finding that Plaintiff's signing of the waiver was knowing and voluntary

2 and the agreement thus enforceable, it is unnecessary to reach Defendants' argument that Plaintiff's

3 failure to tender back the consideration she received from signing the agreement defeats her claim.

4

5 **Conclusion**

6        Plaintiff has not alleged facts sufficient to establish the existence of duress in the signing of an

7 agreement that otherwise satisfies the statutory requirements for a knowing and voluntary waiver.  On

8 that basis, the Court grants Defendants' motion for summary judgment on all of Plaintiff's claims and

9 dismisses Plaintiff's lawsuit with prejudice.

10

11        The clerk is directed to provide copies of this order to all counsel of record.

12        Dated:  July _5_, 2006

13

14                              Marsha J. Pechman

15                              U.S. District Judge

16

17

18

19

20

21

22

23

24

25

26   **ORD ON MTN**
      **FOR SUMM JMT - 8**